UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| MAHDI SHISHEHGAR, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY, a Foreign Insurance Company, REDBRIDGE INSURANCE COMPANY, LTD, a Foreign Insurance Company, DIVE ASSURE, a Foreign Insurance Company.<br><br>Defendants. | CV25-00515-JLR<br><br>SEATTLE, WASHINGTON<br><br>May 7, 2026 - 2:00 p.m.<br><br>TELEPHONIC DISCOVERY CONFERENCE |

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE JAMES L. ROBART
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: Justin G. Elsner
Elsner Law Firm PLLC
23711 Brier Road
Brier, WA 98036

For the Defendants: Andrew L. Margulis
Ropers Majeski PC
800 Third Avenue
29th Floor
New York, NY 10022

Proceedings stenographically reported and transcript produced with computer-aided technology

THE COURT: Good afternoon, counsel. It's Judge Robart. May I have appearances, please?

THE CLERK: Try that one more time. We might have been muted.

THE COURT: This is Judge Robart. May I have appearances, please?

MR. ELSNER: Justin Elsner for the plaintiff.

MR. MARGULIS: Good afternoon, Your Honor. Andrew Margulis for Defendant Berkshire Hathaway.

THE COURT: Thank you, counsel.

If you have trouble hearing me -- I'm often told that I have a fairly quiet voice, so if you can't hear me, shout, and I'll try and get closer to the microphone.

We're here to deal with Docket 30, which is a joint discovery motion. And in Docket 30, you're asking for a motion to compel Interrogatories 8, 11, and 12 and Requests for Production 22 and 24.

I've had a chance to read both of your pleadings or the joint motion that was filed. I have also had a chance to look back over the history of the case thus far.

It is my intention to give you five minutes each to tell me something that was not in your pleadings -- you don't necessarily need to use all of your time -- and then answer a few questions that I may have, and then I'm prepared to rule.

So any questions about our procedure today? Mr. Elsner?

MR. ELSNER: No. This is John Elsner. No, Your Honor.

THE COURT: I don't believe I have seen you in a while. What was it, around 2016, you were representing maybe a Snohomish County Prosecuting Attorney?

MR. ELSNER: Uh, no, I don't believe that was me. I know I had been assisting a defense attorney in a matter where I think there was prosecutors and the government and all kinds of names that were dragged into the case.

THE COURT: That's the one.

MR. ELSNER: Okay.

THE COURT: Anyway, nice to have you back.

Mr. Margulis --

MR. ELSNER: Thank you, Your Honor.

THE COURT: -- I'm pretty confident I have never seen you before, since you're not from around here, but welcome to the Western District.

MR. MARGULIS: Thank you, Your Honor.

THE COURT: And since this is a mutual motion, but most of the heavy lifting seems to have been done by the defendant, Mr. Margulis, I will hear from you first for five minutes. Tell me what there is that's not in your papers that I have had a chance to read.

MR. MARGULIS: Sure. Thank you, Your Honor. This is Andrew Margulis.

I appreciate the time and I'll be brief, and most of it's in

our papers. But just for this context, the interrogatories and requests for production all relate to either proof of payment of the medical expenses and how they're paid and who paid them and information relating to other insurance claims.

And with respect to the documentation we've received, it's very limited, but we have, you know, reason to believe that some of that might not be authentic, and we have snapshots of images of certain hospital bills and things that we believe they're authenticated documents. But that's why we're looking for actual proof of medical expenses.

And the same with the insurance claims. We have reason to believe that plaintiff has submitted, over the last several years, at least 13 insurance claims to other insurance companies, many of which have been rejected for fraud and have been investigated by the Washington Insurance Commissioner's Office, who has determined that fraudulent, forged documents have been submitted for the claims, and we believe that information about those other insurance claims is appropriate for discovery.

And other than that, unless Your Honor has any questions, I have nothing to add.

THE COURT: And I don't believe I do.

So, Mr. Elsner, five minutes. Feel free not to use all of it.

MR. ELSNER: Thank you, Your Honor. Justin Elsner.

I guess what I would just add is that we have --

THE COURT REPORTER: I'm sorry. Mr. Elsner, you need to get closer to your microphone. You are very muffled.

MR. ELSNER: Okay. Sorry about that.

THE COURT: All right. You now understand who is the most important person in this room, and that's the court reporter.

MR. ELSNER: Yes. Sorry. I speak softly as well.

But, yes, the two issues I agree on. I think that it would be important for the Court to know an update on a couple things. One, plaintiff's deposition has now been noted the beginning of the month. That hasn't been taken yet.

And the defense has also submitted subpoenas to various insurance companies, and so I believe, at least on the insurance claim matters, he's probably going to get the best information possible from those subpoenas, and so I think that that would address the issue.

Otherwise, I don't have anything that wasn't already written into the briefing.

THE COURT: All right. Well, let me deal with the more easy of these two questions. And I don't intend to do a written order. The minute entry for today will say that the motion was granted, denied, some of both, whatever, "for the reasons stated on the record." So you might want to take some notes as we go along.

In regards to the argument over collateral source, I'm going

to compel further answer on those questions. I don't believe that there is any protection afforded by the collateral source rule, which is an evidentiary rule and it's intended to regulate the admissibility of evidence at trial, and there is specific case law holding that it cannot be used as a defense to discovery. So the defendant is going to win on that question.

And then, secondly, in regards to the argument made by the plaintiff that the original cause of action or application for coverage was turned down on the basis of two items -- I would note that in Cause of Action No. IV in the plaintiff's complaint is the statement that they're contesting the Insurance Fair Conduct Act, and, in paragraph 17, "The basis for denying benefits was based on a suspicion and conjecture and without a legitimate legal basis" -- that seems to me to make discovery in that area not only appropriate but also probably mandatory.

And I don't think that saying the best source would be talk to the insurance companies. That would be an excellent source, but, in addition, anything that the plaintiff has in regards to claims needs to be disclosed and produced.

Really, where you run into some dispute in this is in regards to the relevance of what I assume to be the medical bills and the payments. I think the plaintiff misstates the current standard in Rule 26. Some of us are so old that we remember the standard being irrelevant or might lead to relevant. That's now been replaced by relevance means when the scope of discovery is

information relevant to the subject matter in the action involved. And, in this instance, since this is dealing with coverage under insurance and payments made under insurance, I find that that information is indeed all appropriate for discovery.

So that takes me to, I think, where we end up in this, which is the Court is granting the motion to compel in regards to Interrogatories 8, 11, and 12 and Requests for Production 22 and 24.

I must say that some of the plaintiff's answers in regards to the interrogatories would raise a flag, were I in practice, when it says "Disclose all sources of payment," and the answer comes back that he didn't get anything from Medicare. That's just not going to make it work here.

Because there's going to be new answers filed in the face of the interrogatories and new productions in the case of the requests for production, I'll ask that that be -- or I will order that that be done 21 days from the date of the entry of the minute order, which will be today.

That will be the Court's ruling on this.

Mr. Elsner, do you have any questions?

MR. ELSNER: No, Your Honor.

Your Honor, thank you for your time.

THE COURT: Mr. Margulis, anything from you?

MR. MARGULIS: No, Your Honor. Thank you.

THE COURT: All right, then. Thank you very much for doing it on this expedited basis. It makes our workload more manageable. And given the number of immigration cases we have right now, we need all the time we can get.

So, counsel, thank you, and the conference is adjourned.

(Adjourned.)

C E R T I F I C A T E

I, Nickoline M. Drury, RMR, CRR, Court Reporter for the United States District Court in the Western District of Washington at Seattle, do certify that the foregoing is a correct transcript, to the best of my ability, from the record of proceedings in the above-entitled matter.

/s/ Nickoline Drury

Nickoline Drury